Argued June 7, affirmed October 3, 1978

WILLIAMSON, *Appellant,*
*v.*
SOUTHERN PACIFIC TRANSPORTATION
COMPANY, *Respondent.*
(No. 31426, SC 25333)
584 P2d 753

Clayton C. Patrick, Salem, argued the cause for appellant. With him on the briefs was Roy Dwyer, Eugene.

James H. Clarke, Portland, argued the cause for respondent. With him on the brief were George L. Kirklin, and Dezendorf, Spears, Lubersky & Campbell, Portland.

Before Denecke, Chief Justice, and Tongue, Bryson, and Linde, Justices.

BRYSON, J.

**BRYSON, J.**

Plaintiff brought this action to recover damages for personal injuries suffered in an accident which occurred when the pickup truck plaintiff was driving struck defendant's engine. The accident occurred at 10 p.m. December 2, 1975. It was sprinkling, but the pavement was not wet. The rail-highway crossing is near Philomath, Oregon, on Highway 20. Plaintiff was driving west and the engine, used for night switching, was headed north at two to three miles per hour. The evidence shows that at the time of the collision the engine's headlights and Mars oscillating light were burning and shining on the highway. Burning flares were placed beside the highway to warn approaching traffic, and the brakeman was flagging with a red lantern. The train's bell was ringing and the whistle was blowing continuously. Plaintiff testified that he neither saw nor heard the engine before he struck it, although he knew he was approaching a crossing. Two cars preceded plaintiff across the track just in front of the engine. The second of those cars had swerved to get around the engine.

The jury found the following on a special interrogatory:

> "Was the defendant negligent in one or more of the respects charged in plaintiff's complaint which was the cause of the injury to the plaintiff? NO."

Clearly, the evidence was sufficient to support the verdict, and plaintiff does not contend otherwise. Judgment was entered in favor of defendant and plaintiff appeals, contending the trial court erred in admitting two separate items of evidence.

One of plaintiff's allegations of negligence was that the defendant railroad had failed

> "* * * to install and maintain such signals and safety devices at said railroad crossing as would be reasonable to give proper warning to automobiles approaching said intersection."

Warnings to motorists at the crossing in question consisted of markings painted on the highway, a round "Railroad Crossing" sign, and crossbucks on either side of the highway. In support of his allegation that defendant should have installed additional warning devices, plaintiff called as witnesses several railroad employees whose testimony tended to show that the crossing was a dangerous one and that additional warning devices would help to reduce the danger. Both of the disputed items of evidence introduced by defendant are related to this issue.

The first of these is a copy of two pages taken from a booklet published by the Oregon Public Utility Commissioner entitled "Railroad Accidents in Oregon —1975—Statistics, Summary and Analysis." Defendant had earlier offered the entire publication in evidence, and plaintiff had objected on the ground that it contained self-serving material, that it was immaterial, and that it was "too broad." The court sustained plaintiff's objection and after an unreported conference in chambers, the trial court admitted, instead of the entire booklet, copies of two of its pages. The first contains a statistical table setting out the number of fatal and non-fatal accidents of different types occurring during 1975 at crossings protected in different ways: by gates, flashing lights, wigwag signals, stop signs, crossbucks only, and "other." The second page summarizes this material in the form of a bar graph. From the page containing the graph, the following textual material which appears on the page in the booklet was deleted from the copy admitted in evidence:

"This graph shows the number of accidents occurring at crossings with various types of protection. It does not purport to illustrate the relative safety or effectiveness of each type of protective device. In order to make such a comparison, it would be necessary to analyze several factors—including train and motor vehicle traffic volumes, speeds, visibility conditions at each crossing, as well as other statistics, including those on page 14 of this

[ 14 ]

report [which was not admitted in evidence] showing the number of crossings protected with each type of warning device and sign."

Other explanatory material was deleted from the page containing the statistical table itself. Nothing in the record explains why the trial court ordered these deletions.

When the trial court ruled that these two pages, as edited, would be admitted, plaintiff objected "on the grounds I stated previously." He now argues that the statistical exhibit was not relevant and that in any event it was improper to excise the textual material which would have disclosed to the jury that the information given there did not purport to show the relative safety of the different types of warning devices.

From the recorded colloquy with the court at the time the entire pamphlet was offered, it is clear that plaintiff's objections that the pamphlet was self-serving and that it was "too broad" did not relate to these two pages of statistics. The objection to the admission of these pages on the same grounds that had been stated in objection to the entire pamphlet, therefore, amounted simply to an objection that these two pages were immaterial.

■ Plaintiff's counsel made no objection of any kind to the court's excising the textual matter from these two pages. For all the record shows, he may have agreed to that treatment during the unreported conference in chambers. In fact, when defendant's counsel offered Exhibit 39, the two pages with the language excised by the court, he stated, "This is the exhibit we discussed during lunch and recess, and I'd offer Exhibit 39." Under these circumstances, we will not consider that portion of the assignment of error.

■ The only issue before us under this assignment is the materiality of the two pages of statistics in the form in which they were submitted to the jury. We are convinced that the evidence was material and proper

[ 15 ]

rebuttal testimony to evidence offered in plaintiff's case-in-chief. It tended to show that, although most of the crossing accidents in 1975 happened at crossings protected only by crossbucks or stop signs, yet a substantial number of accidents took place at crossings protected by gates, flashing lights, and wigwag signals. Plaintiff's complaint and evidence introduced raised the issue of the need for additional protective devices at the crossing in question. The 1975 statistics tended to show that even the more sophisticated types of warning devices do not prevent all crossing accidents.

Plaintiff's specific argument on appeal is that the data in the table does not, without additional information which the jury did not have, prove anything about the *relative* effectiveness of the different types of safety devices at railroad crossings. This objection was never made to the trial judge.

A general objection on the grounds of immateriality or irrelevancy, if overruled, does not permit the objecting party to argue a specific ground of objection for the first time on appeal. *Smith v. Oregon Agricultural Truck.,* 272 Or 156, 159-60, 535 P2d 1371 (1975); *Groce v. Fidelity General Insurance,* 252 Or 296, 307, 448 P2d 554, *reh. den.* (1969). An exception to this rule is recognized when it is apparent from the record that the trial judge must have known what the ground of objection was. *Peters v. Consolidated Freight Lines,* 157 Or 605, 613-14, 73 P2d 713 (1937). That was not the case here, and we decline to consider plaintiff's argument concerning relative effectiveness which has been raised for the first time on appeal.

Plaintiff's second assignment of error concerns the admission of testimony by Donald Still, a transportation specialist employed by the Public Utility Commissioner, that the commissioner's staff had predicted that during a five-year period beginning in 1974, 1.22 accidents could be expected to occur at the crosssing involved in this case. That prediction was made as part

of a routine periodic evaluation of all of the railroad crossings in the state on the basis of a formula devised by a former member of the commissioner's staff. Mr. Still testified regarding the various factors which are taken into account when applying the formula (he did not state the so-called "Jaqua formula") and testified that the staff had found it to be "very reliable."

Plaintiff contends that because the number of accidents predicted under the formula was relatively low, "it could easily have influenced the jury to believe that the crossing was not particularly dangerous." Plaintiff now argues that the testimony was inadmissible under ORS 763.210,[1] which provides:

"The determinations of the commissioner under this Chapter as to hazards at crossings shall not be admissible in any civil action for damages."

The issue raised in the briefs is whether the testimony of Mr. Still, that during a five-year period beginning in 1974, based on certain factors and statistics, would produce a 1.22 accident expectancy at this crossing, is a determination of the commissioner as to hazards under chapter 763.

■ Chapter 763 does not contain any provision directing the commissioner to make the kind of accident predictions produced by the application of this formula. It does, however, provide for a number of actions by the commissioner in which that kind of prediction would be relevant as evidence in a hearing or would be helpful information for the commissioner's use in reaching a decision. Such actions and decisions require

---

[1] ORS 763.210 was adopted in 1971, Oregon Laws ch 655, § 151, as part of a major revision of statutes pertaining to the Public Utility Commissioner. Frank McCulloch, Chairman of the Subcommittee on Transportation of the Advisory Committee on Public Utility and Carrier Law, which prepared the revised bill for the Law Improvement Committee, offered testimony (Senate Judiciary Committee Hearing, April 21, 1971, page 6 of minutes). He offered no testimony nor was he questioned regarding the provision of the revision which became ORS 763.210.

the exercise of the commissioner's judgment.[2] We conclude that the result of such an exercise of judgment is what is meant by the term "determination" in this statute.

■ So far as the record in this case shows, the commissioner had not been called upon to exercise his judgment and make any determination as to hazards with respect to this crossing. The record discloses only that members of his staff have developed a statistical tool, which their experience has indicated is reliable, to assist him in making such determinations when the occasion for them arises. The statute's purpose is to preclude evidence in a civil action for damages that the commissioner has or has not declared a particular crossing to be "hazardous." It does not preclude a member of the staff from testifying, as did witness Still, when it is applied to the crossing involved in this case. Mr. Still's testimony was not related to any proceeding under chapter 763 or any determination by the Public Utility Commissioner. The trial court did not err in admitting Mr. Still's testimony.

In summary, plaintiff raised the issue that this was a hazardous crossing and called Mr. Galloway, the trainmaster, and other train crew members to show that this was a hazardous crossing and that other signaling devices could prevent accidents under circumstances as existed here. Certainly defendant was entitled to offer evidence to rebut that evidence adduced by plaintiff.

Affirmed.

---

[2]The action which most clearly would constitute a determination "as to hazards" would be that taken under ORS 763.170, which provides for a proceeding to determine whether a particular crossing is dangerous and authorizes the commissioner to require protective devices. See also, ORS 763.020 (permission to construct grade crossings after considering public safety and other factors); 763.030 (determination that grade crossing must be eliminated, relocated or altered); 763.260 (commissioner to apply federal funds available for removal of hazards at hazardous crossings); 763.035 (determining speed limits for trains after considering hazards and other factors); 763.055 (establishing priorities for bringing existing crossings into compliance with new specifications).